***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Stanback and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and the subject matter.
2. All parties are subject to and bound by the North Carolina workers' compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Plaintiff alleges that his injury occurred on April 27, 2006.
5. An employment relationship existed between the plaintiff and the defendant during some or all of the time period of the previous paragraph.
6. The carrier on the risk at the time of the alleged injuries was Wausau Insurance Company.
7. The plaintiff's average weekly wage was $407.33, rendering a compensation rate of $271.55
8. The Pre-Trial Agreement was stipulated into evidence as Stipulated Exhibit 1.
9. The following exhibits were stipulated into evidence as Stipulated Exhibit 2:
 a. Calaway Associates / Pro-med, medical records;
 b. Salisbury Orthopedic Associates, medical records;
 c. Superior Medical Equipment;
 d. Rowan Memorial Emergency Services;
 e. Rowan Regional Medical Center.
10. The following exhibits were stipulated into evidence as Stipulated Exhibit 3:
 a. May 2, 2007 Order by Deputy Commissioner Stanback; *Page 3 
 b. March 26, 2007 Order by Deputy Commissioner Stanback;
 c. March 1, 2007, form 90-Report of Earnings;
 d. February 27, 2007 Order by Special Deputy Commissioner Lovelace;
 e. February 5, 2007 Order by Deputy Commissioner DeLuca;
 f. September 18, 2006, Mediator's Report;
 g. July 21, 2006 Order by Deputy Commissioner Schafer;
 h. July 5, 2006, Form 61-Denial of Workers Compensation Claim;
 i. July 5, 2006, Form 33R,-Response to Request for Hearing;
 j. May 26, 2006, Form 33-Request for Hearing;
 k. May 25, 2006, Form 61-Denial of Workers Compensation Claim;
 l. May 11, 2006, Form 18-Notice of Accident;
 m. March 22, 2006, Employer's Report of Injury;
 n. June 29, 2006, Form 22-Statement of Earnings;
 o. September 13, 2006, Plaintiff's Motion to Compel Discovery . . .;
 p. September 19, 2006, Defendant's Response to Motion;
 q. January 31, 2007, Plaintiff's Motion to Compel Authorization Payment of Medical Benefits . . .;
 r. February 5, 2007, Defendant's Response to Motion;
 s. Plaintiff's Exhibit 1 — the September 26, 2007 deposition of Dr. Robert Steele;
 t. Defendant's Exhibit 1 — Plaintiff's Employee File; and *Page 4 
 u. Defendant's Exhibit 2 — the October 15, 2007 deposition of Houston Wayland.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is fifty years old, and plaintiff was not employed as of the date of the hearing before the deputy commissioner.
2. Plaintiff worked as an overhead concrete operator for defendant-employer for approximately one and one half years and averaged forty working hours per week prior to his date of injury. Defendant-employer engages in making concrete pipes and blocks.
3. On April 27, 2006, a heavy concrete form struck plaintiff's upper left foot near the ankle. Plaintiff testified that he was wearing steel-toed boots with a metal protective flap when the metal cage being lifted by a crane caught onto a hinge in a concrete form and the heavy load weighing approximately 2500 pounds landed on his foot. An hour after the incident, plaintiff was unable to continue working because the pain in his foot became unbearable. Plaintiff reported the injury to defendant.
4. Defendant then transported plaintiff to ProMed for medical treatment. X-rays of plaintiff's left foot and ankle revealed joint space between plaintiff's talar and navicular bone and a slight irregularity dorsum of distal talus and proximal navicular. The initial medical diagnosis for plaintiff's injury was crush injury/contusion left foot. Plaintiff was provided prescription Ibuprofen and Percocet for pain and was restricted to sitting-only job duties at work for two days and advised to follow-up with a medical examination in two days.
5. Defendant-employer's safety director conducted an improper communication with plaintiff's physician. Dr. Thomas Marlowe's April 27, 2006 medical report documents that the *Page 5 
safety director "came in and explained that he interviewed each of the people around the patient and that no one else witnessed any such accident. He states that this type of injury can not happen . . . there by refuting what the patient had stated" about how plaintiff was injured at work.
6. On April 29, 2006, plaintiff received a follow-up examination at ProMed with Dr. David N. Russell. Physical examination revealed a swollen left foot over the mid dorsal area, and plaintiff reported tenderness over the base of the third metatarsal and over the associated tarsal bones. Plaintiff was unable to bear weight on the left foot without extreme pain. Dr. Russell continued plaintiff's work restrictions, revised the diagnosis of injury to Crush Injury Ankle and Crush Injury Foot, and ordered an MRI for further evaluation of plaintiff's medical condition. Plaintiff was prescribed an AFO Walker Boot to be worn at all times except when showering and was ordered to elevate his leg above the heart to relieve the throbbing pain. The hospital medical benefits coordinator made several unreturned calls to defendant-carrier, leaving messages requesting authorization to obtain MRI views of plaintiff's foot/ankle.
7. Defendants did not provide accommodations and/or suitable employment in response to plaintiff's medically imposed work restrictions. Plaintiff could not operate machinery while taking his prescribed medications, and no light duty work was available. Plaintiff was eventually terminated from employment with defendant-employer.
8. On May 5, 2006, plaintiff underwent an MRI of his foot/ankle because Dr. Russell felt that if plaintiff required surgery, an immediate and accurate diagnosis was required before the window of opportunity closed to successfully correct plaintiff's injuries. Dr. Russell reviewed the MRI report and advised plaintiff to elevate his foot above his heart as much as needed to control swelling and pain. Dr. Russell opined that part of plaintiff's problem was that "it would not take much from a 2000 pound form to cause a problem so even a minor hit could *Page 6 
be a problem. It may have been a gentle crushing injury that initially did not see much swelling [plaintiff did] have significant injury and he [required a medical referral for treatment with an] orthopedist." Dr. Russell related plaintiff's condition to plaintiff's work related injury on April 27, 2006.
9. On May 11, 2006, Dr. Robert Steele, an orthopedic physician, examined plaintiff's foot injury. Dr. Steele reviewed plaintiff's MRI and x-ray reports which revealed a soft tissue injury with swelling that would be consistent with a crush injury or something as plaintiff described that landed on plaintiff's foot. Dr. Steele diagnosed plaintiff as having sustained a partial tear of the extensor hallucis, which is the tendon on the top of the foot that raises the big toe. Dr. Steele took plaintiff out of work through June 15, 2006.
10. On May 25, 2006, Dr. Steele examined plaintiff's foot injury and released plaintiff to return for treatment as needed. Dr. Steele gave plaintiff a return to work slip for June 15, 2006 in anticipation of plaintiff being better by that date.
11. On July 18, 2006, Dr. Steele conducted his final examination of plaintiff's foot injury in response to plaintiff's continued pain in his foot and pain in the back of his ankle, and tingling sensation on the top of plaintiff's foot at the site of the blunt trauma from the workplace injury. Dr. Steele prescribed anti-inflammatory medicines and released plaintiff to return as needed. Dr. Steele did not provide an out of work note on this date. Dr. Steele would conduct further diagnostic testing if plaintiff continued to experience symptoms arising from the injury by accident if plaintiff required further treatment, but at that point plaintiff did not require any major intervention. Dr. Steele opined that there was no reason that plaintiff should not completely heal. *Page 7 
12. Defendant denied payment of the medical bills associated with plaintiff's treatment with Dr. Steele in the amount of $195.00. Plaintiff did not have private health insurance to pay for continued medical treatment. Plaintiff was therefore unable to return for additional medical treatment to his left foot/ankle.
13. Plaintiff has not reached maximum medical improvement for his injuries, and as of the time of the hearing before the deputy commissioner continued to experience pain, numbness, and sensitivity in his foot and also found it difficult to stand.
14. The evidence in this case consists of conflicting testimony concerning the April 27, 2006 incident by plaintiff, Gary Miller, the plant supervisor for defendant-employer, Michael Johnson, plant manager, Ernest Jackson, human resources manager and safety director, and Houston Wayland, a co-worker. Although the testimony is inconsistent, the Full Commission gives greater weight to plaintiff's testimony regarding the April 27, 2006 incident.
15. Based upon the greater weight of the evidence, the Full Commission finds that plaintiff suffered a compensable injury by accident on April 27, 2006 and as a result of his injury by accident of April 27, 2006, plaintiff was unable to earn any wages in any employment from April 27, 2006 through July 18, 2006. Plaintiff has made no attempts to return to work since the April 27, 2006 work injury.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following: *Page 8 
 CONCLUSIONS OF LAW
1. On April 27, 2006, plaintiff sustained a compensable injury by accident to his left foot/ankle, arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff's average weekly wage was $407.33, rendering a weekly compensation rate of $271.55.
3. As a result of his compensable injury by accident of April 27, 2006, plaintiff was unable to earn wages in any capacity from April 27, 2006 through July 18, 2006 and is therefore entitled to temporary total disability compensation at the rate of $271.55 per week from April 27, 2006 until July 18, 2006. N.C. Gen. Stat. §§ 97-29, 97-30.
4. To the extent the same are reasonably required to affect a cure, provide relief and/or lesson the period of disability associated therewith, defendants are required to pay all reasonable medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury by accident on April 27, 2006. N.C. Gen. Stat. §§ 97-25; 97-25.1
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to attorneys fees awarded herein, defendants shall pay to plaintiff temporary total disability compensation at the rate of $271.55 per week from April 27, 2006 through July 18, 2006. Any sums that have accrued shall be paid in one lump sum. *Page 9 
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as result of his compensable injury by accident of April 27, 2006. Medical bills are payable when said bills have been submitted according to established Industrial Commission procedures.
3. Dr. Robert Steele is hereby approved by the Industrial Commission as the treating physician authorized to attend, prescribe and assume the care and charge of plaintiff's left foot/ankle associated with this claim, including making referrals to other medical care providers for the treatment plaintiff needs arising from this compensable injury.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff in Paragraph 1 of this AWARD is hereby APPROVED for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This the 5th day of August 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER